FILED
CLERK, U.S. DISTRICT COURT
08/20/2026
CENTRAL DISTRICT OF CALIFORNIA
BY dgo DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

**FILING FEE PAID**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JORGE ALEJANDRO ROJAS,

Plaintiff,

v.

YES ON 50, THE ELECTION RIGGING RESPONSE ACT, GOVERNOR NEWSOM'S BALLOT MEASURE COMMITTEE, FUND FOR POLICY REFORM, and HMP FOR PROP 50,

Defendants.

Case No. 2:26-cv-09507-FMO (DMKx)

**COMPLAINT FOR:**

1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

Plaintiff, Jorge Alejandro Rojas, files this Complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against Defendants YES ON 50, THE ELECTION RIGGING RESPONSE ACT, GOVERNOR NEWSOM'S BALLOT MEASURE COMMITTEE ("YES ON 50"), FUND FOR POLICY REFORM ("FFPR"), and HMP FOR PROP 50 ("HMP") collectively "Defendants", and alleges based on personal knowledge and information and belief, as follows:

## INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.

3. This case involves a campaign by Defendants which placed illegal, campaign-related pre-recorded, artificial, and automated texts to Plaintiff's telephone number, which were not consented to.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct operations in the state of California. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois. Plaintiff previously resided within this District, and has an "in district" telephone number.

8. Defendant YES ON 50, THE ELECTION RIGGING RESPONSE ACT, GOVERNOR NEWSOM'S BALLOT MEASURE COMMITTEE is a California Ballot

Measure Committee, with a principal address of 701 12TH STREET SACRAMENTO, CA 95814, and a treasurer of Gavin Newsom, and Assistant Treasurer of John Myles.

9. Defendant Fund for Policy Reform ("FFPR") is a registered California Major Donor Committee with a principal address of 224 West 57th Street, New York, NY 10019 and a Responsible Officer of Maija Arbolino.

10. Defendant HMP for Prop 50 ("HMP") is a registered California Ballot Measure Committee with a principal address of 1032 15th Street NW, Suite 247, Washington, DC 20005, with Treasurer of Brian Wolff and Assistant Treasurer of Marisa Mormile.

11. Defendants are each a person as defined by 47 U.S.C. § 153(39).

12. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**STATUTORY BACKGROUND**

13. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

14. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.

15. "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous

disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

17. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

18. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

19. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

20. The FCC explains in its "Rules for Political Campaign Calls and Texts" that "Robotexts – text messages generated through autodialing – are also considered a type of call and fall under all robocall rules. As text messages generally go to mobile phones, robotexts require the called party's prior express consent. However, political text messages can be sent without the intended recipient's prior consent if the message's sender does not use autodialing technology to send such texts and instead manually dials them." https://www.fcc.gov/rules-political-campaign-calls-and-texts.

21. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

22. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id*. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

23. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

24. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express written consent of the called party." This includes political calls. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules – Biennial Reminder for Pol. Campaigns About Robocalls & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016).

**<u>FACTUAL ALLEGATIONS</u>**

25. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582. The phone number is not associated with a business and is used by Plaintiff solely.

26. Plaintiff is the account holder and customary user of his phone number.

27. Plaintiff previously resided within this District.

28. The text messages were made to an "in district" telephone number.

29. Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

30. Upon information and belief, the automated text messaging system used by Defendants to send the text messages also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

31. Moreover, the message sent to Plaintiff was drafted in advance and sent out automatically based on pre-programmed parameters.

32. The texting platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send our text messages en masse. Thus, a random or sequential number generator is used both to store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

33. In Merriam Webster's Dictionary "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

34. The messages sent to Plaintiff by Defendants using their SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff. The platform is a man-made

humanly contrived program which allows companies to blast out such messages via non-spontaneous methods, i.e. automated methods similar to that of an assembly line in a factory. Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, en masse, pursuant to preprogrammed parameters.

35. Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance." "Recorded" is defined as "to set down in writing." The text message sent to Plaintiff's cellular telephone via the SMS blasting platform was set down in writing in advance by Defendant, whose employees wrote out the standard automated messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendant employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

36. Plaintiff was annoyed and felt harassed by the receipt of the text messages from Defendants.

37. A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

38. The text messages sent were generic in nature, clearly meant to be sent to a large group of individuals at once.

39. It would be unreasonable for a human to manually send the text messages at issue to Plaintiff, along with all of the other targets of the text message, and modify each message to include the appropriate relevant information such as the polling location.

40. Defendants may have selected numbers to be texted sequentially (or possibly randomly) and then used publicly available databases to identify the owner of the telephone number dialed when such randomly or sequentially generated text was sent.

41. Even if Defendants "uploaded" a list of telephone numbers to a database, that database or system can still be using a random or sequential number generator to decide the order in which to send the text messages, given that it can't send them *all* at once.

42. For example, the text messaging system may have identified a dialing order to each telephone number for each campaign when sending out the text messages, using a random or sequential number generator.

43. The texts were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

44. Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the Sinch telephone service. However, no facts exist to show that Defendants called the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc*., No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc*., No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

45. If a text is a call, then the communication conveyed on that "call" must be treated the same as the communication made on an auditory call.

46. A live individual did not send out each individual text message to Plaintiff.

47. Agentless SMS messages sent by computers are clearly artificial.

48. So a text sent in such a manner is an artificial voice.

49. The text messages were sent en masse to many individuals and were pre-written and not personalized in nature except for automated scripting which would insert the relevant information needed to be included. Plaintiff has never provided his consent to be called or texted to Defendants.

50. **Call 1.** On or about September 29, 2025 at 6:59 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 279-400-8725.

51. Call 1 was a picture of Governor Newsom and President Trump:



52. **Call 2, 3, 4, 5, 6, 7, 8, 9.** On or about September 29, 2025 at 6:59 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 279-400-8725.

53. Call 2, 3, 4, 5, 6, 7, 8, 9 contained the following: "A last-ditch request - Gavin Newsom. As you read this, we are getting absolutely pummeled with ads from our opponents on TV and the internet, one MAGA millionaire has donated $30 million to beat us, and Kevin McCarthy (yes, him) has millions more coming. If everyone reading this donated even $10 to pass the Election Rigging Response Act in California before tomorrow's deadline, we'd raise what we need to win and never have to ask again. But the truth is, most people will scroll or swipe away from this message — even though this election is quite literally about control of the House of Representatives and putting a check on Trump's power for his last two years in office. That's why we're relying on people who truly understand the threat and the stakes to chip in today. Our average donation is around $30. Many donors give less. Some give more. All that matters is you are choosing to act to help pass the Election Rigging Response Act to give Democrats

a fair chance in the next election. Do it here: https://g.ive.blue/iOqhIgj9 Thank you. Paid for by stopelectionrigging.com. Top Funder: Fund for Policy Reform. Reply STOP to opt out".

54. Call 2, 3, 4, 5, 6, 7, 8, 9 contained 1154 characters, which according to a text messaging segment calculator, available at https://twiliodeved.github.io/message-segment-calculator/, counts as 8 segments. Upon information and belief, the sender likely paid more for these texts because of their length.

55. **Call 10.** On or about September 30, 2025 at 6:15 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 916-378-3878.

56. Call 10 was a picture of Governor Newsom:



57. **Call 11, 12, 13, 14, 15, 16, 17, 18.** On or about September 30, 2025 at 6:15 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 916-378-3878.

58. Call 11, 12, 13, 14, 15, 16, 17, 18 contained the following: "A massive defeat for Donald Trump - Gavin Newsom $30 (our average online donation) ... or whatever you can afford. That is the donation Gavin Newsom is asking you to make before our fundraising deadline ends tonight at midnight. We're sure your inbox and phone are crowded with fundraising requests from campaigns ahead of tonight's FEC deadline.

But here's why your donation to help pass the Election Rigging Response Act deserves your consideration today. $30 because this election is not next year -- in this election, voting starts next week. $30 because the only chance Democrats have of taking the House is if we pass the Election Rigging Response Act in California. $30 because Democrats standing up, fighting and winning will be a massive rebuke, and defeat for Donald Trump and the Republican Party. If dealing a massive defeat for Donald Trump and giving Democrats a fair chance to take the House is worth $30 to you, that's the contribution we're asking you to make before tonight's deadline. Do it here: https://g.ive.blue/Mc2gc4E8 Thank you. Paid for by stopelectionrigging.com. Top Funder: Fund for Policy Reform. Reply STOP to opt out"

59. Call 11, 12, 13, 14, 15, 16, 17, 18 contained 1160 characters, which according to a text messaging segment calculator, available at https://twiliodeved.github.io/message-segment-calculator/, counts as 8 segments. Upon information and belief, the sender likely paid more for these texts because of their length.

60. **Call 19.** On or about October 7, 2025 at 4:21 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 916-378-3059.

61. Call 19 was a picture of Governor Newsom:



62. **Call 20, 21, 22, 23, 25, 26.** On or about October 7, 2025 at 4:21 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 916-378-3059.

63. Call 20, 21, 22, 23, 25, 26 contained the following: "Gavin Newsom here - being direct and honest: I need you to donate to help us pass the Election Rigging Response Act in California. Folks, this is like 5 House elections in one, and voting has already started. And God help us if we lose. We may have enjoyed our last free and fair election. They're redrawing districts to hold the House; going after ActBlue and Democrats' ability to fundraise; going after colleges, the free press and those they don't like in the media. One guy has already spent $30 million to help Trump win here. And our only chance to fund a winning campaign is if people like you who understand the stakes can donate a few bucks before we have to start making difficult budget decisions. So please - I am asking, humbly. Donate here: https://g.ive.blue/fS3dyLdi Thank you. - Gavin Newsom Paid for by stopelectionrigging.com. Top Funder: HMP for Prop 50. Reply STOP to opt out"

64. Call 20, 21, 22, 23, 25, 26 contained 909 characters, which according to a text messaging segment calculator, available at https://twiliodeved.github.io/message-segment-calculator/, counts as 6 segments. Upon information and belief, the sender likely paid more for these texts because of their length.

65. **Call 27.** On or about October 8, 2025 at 2:15 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 279-895-5574.

66. Call 27 was a picture of Governor Newsom:



67. **Call 28, 29, 30, 31, 32, 33.** On or about October 8, 2025 at 2:15 PM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 279-895-5574.

68. Call 28, 29, 30, 31, 32, 33 contained the following: "Gavin Newsom here - being direct and honest: I need you to donate to help us pass the Election Rigging Response Act in California. Folks, this is like 5 House elections in one, and voting has already started. And God help us if we lose. We may have enjoyed our last free and fair election. They're redrawing districts to hold the House; going after ActBlue and Democrats' ability to fundraise; going after colleges, the free press and those they don't like in the media. One guy has already spent $30 million to help Trump win here. And our only chance to fund a winning campaign is if people like you who understand the stakes can donate a few bucks before we have to start making difficult budget decisions. So please - I am asking, humbly. Donate here: https://g.ive.blue/9lRI5P8i Thank you. - Gavin Newsom Paid for by stopelectionrigging.com. Top Funder: HMP for Prop 50. Reply STOP to opt out"

69. Call 28, 29, 30, 31, 32, 33 contained 909 characters, which according to a text messaging segment calculator, available at https://twiliodeved.github.io/message-

segment-calculator/, counts as 6 segments. Upon information and belief, the sender likely paid more for these texts because of their length.

70. **Call 34.** On or about October 24, 2025 at 10:25 AM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 916-378-3059.

71. Call 34 was a picture of Governor Newsom:



72. **Call 35, 36, 37, 38, 39, 40, 41, 42.** On or about October 24, 2025 at 10:25 AM Pacific time, Plaintiff received a text from Defendants, or an agent or affiliate acting on their behalf, from 916-378-3059.

73. Call 35, 36, 37, 38, 39, 40, 41, 42 contained the following: "May God help us if we lose - Gavin Newsom  Hi there. It's Gavin Newsom. I'm reaching out to respectfully ask you to make a contribution to help me pass the Election Rigging Response Act in California.  Folks... I am worried.  God help us if we lose in California. We may have enjoyed our last free and fair election. They're redrawing districts in several states to hold the House; they're going after ActBlue and Democrats' ability to fundraise; going after colleges and their opponents on television and more.  I want to stress the importance of this ask: people are voting right now, and if we come up short, that means unchecked power for Trump.  This is an all-hands-on-deck moment for Democrats. I need your help and we need it today. So I am asking:  If you understand how important it is that Democrats have a fair chance to take back the House, then I am

asking you to make a contribution to help us pass the Election Rigging Response Act. We need the resources today, and we will put your donation right to work. https://g.ive.blue/zXV8k1BD Reply STOP to opt out"

74. Call 35, 36, 37, 38, 39, 40, 41, 42 contained 1076 characters, which according to a text messaging segment calculator, available at https://twiliodeved.github.io/message-segment-calculator/, counts as 8 segments. Upon information and belief, the sender likely paid more for these texts because of their length.

75. To the extent that Defendants are utilizing a third-party call center to make calls on its behalf, Defendants named here are vicariously liable for their conduct, as that conduct was made for their own benefit.

76. The calls were made for the purposes of soliciting campaign election contributions and were made using an ATDS.

77. Plaintiff alleges that the calls were made using an ATDS due to indicators including the inclusion of "Reply STOP to opt out" and also the statement "Sign up here to receive text updates. By participating, you consent to recurring autodialed campaign & donation messages from Gavin Newsom to the phone number you provide. No consent required to buy. Messaging frequency varies. For SMS, Msg & data rates may apply. Text HELP for help, STOP to end. Privacy Policy & Terms of Service apply." available on the website linked in the texts, https://stopelectionrigging.com.

78. The conduct alleged in this action was made willful and knowingly.

79. The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

80. Plaintiff did not have a prior business relationship with Defendants.

81. Defendants did not have any consent to call Plaintiff.

82. Defendants have never received contributions from Plaintiff.

83. Plaintiff has not been eligible to vote in an election in California for over 11 years.

84. The fact Plaintiff hasn't been eligible to vote in a California election for over a decade is further evidence that an ATDS was used.

85. Defendants are not an organization exempt from the TCPA.

86. In total, Defendants and/or their affiliates placed at least FORTY TWO (42) texts to Plaintiff.

87. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

88. Defendants have a pattern and practice of failing to comply with the TCPA.

89. The foregoing acts and omissions were in violation of the TCPA.

90. Defendants are engaging in violations of the TCPA to get donations.

91. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

92. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

93. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

94. Plaintiff is also entitled to an award of costs.

95. Defendants' calls were not made for "emergency purposes."

96. Defendants' calls to Plaintiff were made without any prior express written consent.

97. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

98. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

99. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

100. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

**COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)**

101. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

102. Defendant or one of its affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least FOURTY TWO (42) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

103. Plaintiff was statutorily damaged at least FOURTY TWO (42) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone call described above, in the amount of $500.00 for each.

104. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $63,000.00 plus costs and any other remedy deemed appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $63,000.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,
B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),
C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5),
D. All reasonable witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,
E. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,
F. Leave to amend this Complaint to conform to the evidence presented at trial,
G. Any other relief this Court deems proper.

Respectfully submitted,

Dated: August 20, 2026.

/s/
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582